THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD CONCEPCION, Appellant. [644 NYS2d 498]

Defendant was convicted of two separate assaults, one month apart, on his mother. In the first, on July 22, 1992, defendant struck her with his fists and a "little table", causing her to sustain an injury to her mouth that required stitches. In the subsequent incident, on August 22, 1992, defendant stabbed his mother with a barbecue fork when she refused his demand for $20. She was taken from her apartment by ambulance to St. Luke's Hospital and underwent reconstructive surgery on her left orbit, the bony cavity surrounding the eye. While this procedure was successful, she also suffered a ptosis, a drooping, of the left upper eyelid and a minor fracture of the right orbit, as well as multiple lacerations of the face. At trial, the victim, the sole eyewitness, refused to testify, apparently in an effort to spare her son from the legal consequences of his acts. Called to the stand by the People, she stated at various times, when asked to testify as to the incidents, "I can't"; "This is too hard for me"; "No, please, No. I don't want to, no"; "Everybody, everybody knows what happened already." The People then introduced, over objection, the videotape of the mother's Grand Jury testimony, taken during her stay at St. Luke's Hospital, and played it to the jury in her presence. Efforts to question her after the playing of the tape proved largely fruitless.

New York has modified the common-law rule that prior testimony is generally inadmissible as constituting hearsay when offered for its truth by allowing testimony given at certain prior proceedings to be admitted at a subsequent proceeding, provided that the witness is "unable to attend" the subsequent proceeding because of "death, illness or incapacity, or [because the witness] cannot with due diligence be found, or is outside the state or in federal custody and cannot with due diligence be brought before the court". (CPL 670.10 [1].) In the instant matter, even if the mother were found to be unavailable due to "incapacity" (*see, e.g., People v Muccia*, 139 AD2d 838, 839, *lv denied* 72 NY2d 960), a rather dubious proposition, the statutory exception to the common-law rule would still be unavailable since it is limited to three types of prior proceedings—previous trials, preliminary hearings conducted pursuant to CPL 180.60 and conditional examinations taken pursuant to CPL article 660. (*See*, CPL 670.10 [1].) These three classes of prior testimony rendered admissible in criminal proceedings by CPL 670.10 " 'are exclusive' ". (*People v Green*, 78 NY2d 1029, 1030.) As the Court of Appeals noted in *People v Geraci* (85 NY2d 359), in reaffirming the holding in *Green*, not only is Grand Jury testimony not mentioned in CPL 670.10, but such testimony "is especially troubling because 'although given under oath, [it] is not subjected to the vigorous truth testing of cross-examination' " and it "is often obtained through * * * conditions which tend to impair its reliability", such as "leading questions and reduced attention to the rules of evidence." (*People v Geraci, supra*, at 368.) And, it should be noted, there is no argument here that the only recognized exception to the common-law rule barring the admission of prior Grand Jury testimony in a criminal prosecution—where the defendant's own misconduct has procured the witness's unavailability at trial (*see, supra*, at 365)—is applicable. Not only is there no evidence to support such an argument but a defendant's culpability in that regard must be shown by clear and convincing proof (*supra*, at 366-367). Thus, the introduction, over defendant's repeated objection, of the mother's videotaped Grand Jury testimony on the People's direct case, which raised hearsay and Confrontation Clause issues, was in clear violation of the limited statutory authorization for the use of prior testimony. Defendant's conviction, based almost entirely on the use of such hearsay testimony, cannot stand. We do not find, as the People argue, that defendant's single reference in his opening statement to a prior statement by the complainant opened the door to the use of such testimony. In any event, the prosecutor's objection to that isolated reference was sustained without further comment.

We have reviewed defendant's argument that he was denied his due process and statutory right to make an opening argument by the court's repeated interruptions and admonitions that counsel tell the jury "what you are going to prove", and find it to be without merit. While we have reversed convictions in the past based, in part, on similar comments (*see, e.g., People v Robinson*, 202 AD2d 225, *lv denied* 84 NY2d 871; *People v Rodriguez*, 211 AD2d 443), in the circumstances presented here there is no realistic view that the court's remarks could be interpreted so as to skew the burden of proof. The court amply charged on that subject before openings, advising the jury that the defense attorney might or might not make an opening statement, but did not have to do so "because he does not have to prove nor disprove anything during the course of this trial." The court's final charge carefully repeated that instruction. Review of the record shows that defense counsel was allowed to make an opening statement and to complete it. The court, to its credit, refused to allow counsel to misuse the opening to make such arguments as, "I am sure the prosecution is going to try to spell out as many witnesses as [it] can, as many facts as [it] can to kind of cloud your minds with the fact [that if it] throws everything up in the ceiling, something will stick." This was nothing more than a summation argument. All of the other summation-type comments to which the court took issue and responded with its admonition were of a similar improper nature. Concur—Sullivan, J. P., Ellerin, Rubin, Kupferman and Williams, JJ.